IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| HEATHER SMOUT,<br><br>    Plaintiff,<br><br>v.<br><br>CUTRUBUS MOTORS, HOMER CUTRUBUS, KORD CUTRUBUS, SKYLER CUTRUBUS, and JUSTIN SMITH,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S RENEWED MOTION TO APPOINT COUNSEL<br><br>Case No. 1:15-CV-1 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendants' Motion for Summary Judgment and Plaintiff's Renewed Motion to Appoint Counsel. For the reasons discussed below, the Court will grant Defendants' Motion for Summary Judgment and deny Plaintiff's Renewed Motion to Appoint Counsel.

I.  BACKGROUND

Cutrubus Motors, Inc. ("Cutrubus") is an auto dealership that sells new and used cars in Weber County, Utah. Cutrubus was founded by Homer Cutrubus and is managed in part by Kord Cutrubus, who is the Chief Operating Officer. At certain relevant times, Skyler Cutrubus was Plaintiff's supervisor.

Justin Smith was hired by Cutrubus in 2005 as a sales manager. He was later promoted to various management positions within the company.

Plaintiff was hired by Cutrubus in February 2005. Plaintiff started as a sales associate, but later held other positions like finance manager and new car sales manager. Plaintiff last

1

worked for Cutrubus in February 2014, when she resigned from her position as new car sales manager.

On June 15, 2012, Plaintiff, Mr. Smith, and another Cutrubus employee were on a business trip. Mr. Smith was Plaintiff's manager at the time. On that trip, Mr. Smith entered Plaintiff's hotel room, disrobed in front of her, and requested sexual favors. Plaintiff fended off Mr. Smith's advances. Upon returning from the trip, Mr. Smith apologized and offered Plaintiff a promotion to the position of finance manager. Plaintiff accepted the position. Plaintiff had been promoted to and demoted from this position several times in the past.

In April 2013, Plaintiff was informed by Mr. Smith that she would be removed from the finance manager position and would be placed in the position of new car sales manager. This change did not happen right away and Plaintiff was not removed as finance manager until June 17, 2013.

After being removed from the finance manager position, Plaintiff did not have a written job description and pay plan for a period of time. Ultimately, Plaintiff was provided a job description and pay plan on August 5, 2013. Under that plan, Plaintiff's commissions would be based on sales she made personally, not on the store's profits. Other than the change in how she received commissions, Plaintiff's other benefits largely remained the same in this new position.

On June 25, 2013, Plaintiff was given a written reprimand. Plaintiff was reprimanded for telling another employee that Mr. Smith was upset with her for being late, and was going to fire her. The reprimand did not change Plaintiff's job duties or reduce her compensation.

On or about June 26, 2013, Plaintiff, for the first time, informed Cutrubus of Mr. Smith's conduct in June 2012. By that time, Mr. Smith had been transferred to a different dealership.

Nevertheless, Cutrubus investigated the incident. At the conclusion of the investigation, Cutrubus gave Mr. Smith a written warning, instructed him not to contact Plaintiff, did not allow him to supervise other employees for a period of time, and required him to attend sensitivity training.

On September 12, 2013, Plaintiff alleges that she was told by a former Cutrubus employee that Skyler Cutrubus intended to let her go. Plaintiff claims that in the following months, her ability to earn commissions was restricted. However, Plaintiff also admitted that she worked less during this time period. Plaintiff eventually resigned on February 22, 2014.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[2] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[3]

---

[1] Fed. R. Civ. P. 56(a).

[2] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[3] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

III.  DISCUSSION

Plaintiff's Complaint asserts a number of claims against Defendants.[4]  Plaintiff brings claims under Title VII of the Civil Rights Act for hostile work environment, discrimination on the basis of gender, and retaliation.  Plaintiff also brings a claim for constructive discharge and a state-law claim for negligent retention and supervision.  The Court will discuss those claims in turn.

A.   TITLE VII CLAIMS

*1.   Hostile Work Environment*

Plaintiff's hostile work environment claim relates to the June 2012 incident involving Mr. Smith.  The Court must first consider Defendants' argument that this claim is untimely.

Title VII requires a plaintiff to file a charge of discrimination within 300 days "'after the alleged unlawful employment practice occurred.'"[5]  "A claim is time barred if it not filed within these time limits."[6]  However, hostile work environment claims "often involve a series of incidents that span a period of longer than 300 days."[7]  The Supreme Court has held that "as long as 'an act' contributing to a hostile work environment took place no more than 300 days before

---

[4] The Court would note that the individual Defendants may not be held personally liable under Title VII.  "'The relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act.'"  *Haynes v. Williams*, 88 F.3d 898, 899 (10th Cir. 1996) (quoting *Sauers v. Salt Lake Cty.*, 1 F.3d 1122, 1125 (10th Cir. 1993)).  Thus, the Court will analyze Plaintiff's claims as against Cutrubus.

[5] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 104–05 (2002) (quoting 42 U.S.C. § 2000e-5(e)(1)).

[6] *Id.* at 109.

[7] *Duncan v. Manager, Dep't of Safety, City & Cty. of Denver*, 397 F.3d 1300, 1308 (10th Cir. 2005).

4

the plaintiff filed an EEOC charge, a court may consider the complete history of acts comprising that hostile work environment."[8]

"[W]hen analyzing a hostile work environment claim spanning longer than 300 days '[a] court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period.'"[9] "[T]here must be a relationship between acts alleged after the beginning of the filing period and the acts alleged before the filing period . . . ."[10] "[A] series of alleged events comprises the same hostile environment where 'the pre- and post-limitations period incidents involve[d] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers.'"[11]

Plaintiff filed her charge of discrimination on December 9, 2013. Thus, those incidents that occurred before February 12, 2013, would generally be barred unless an act contributing to the hostile work environment took place within the filing period. In making this determination, the Court examines the "acts within the filing period and consider[s] whether incidents outside the filing period are sufficiently related to constitute the same employment practice."[12] "To determine whether these acts are part of the same hostile work environment, *Morgan* advises looking at the type of these acts, the frequency of the acts, and the perpetrator of the acts."[13]

---

[8] *Id.* (citing *Morgan*, 536 U.S. at 117).

[9] *Id.* (quoting *Morgan*, 536 U.S. at 120) (second alteration in original).

[10] *Id.*

[11] *Id.* at 1309 (quoting *Morgan*, 536 U.S. at 120) (second alteration in original).

[12] *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1140 (10th Cir. 2008).

[13] *Duncan*, 397 F.3d at 1309.

This task proves difficult given the lack of clarity in Plaintiff's claims. Plaintiff's Complaint limits her sexual harassment claim to the incident involving Justin Smith in June 2012. Plaintiff also testified about sexual statements being made by Mr. Smith at company Christmas parties, the use of sexually charged language by Mr. Smith, and being asked by Mr. Smith to give him back massages. Plaintiff was not sure when these incidents took place. However, it appears that they all occurred prior to February 2013.

To the extent the Court can glean them from Plaintiff's submissions, those acts that occurred within the limitations period were of a different nature than those involving Mr. Smith. They did not involve the same employment actions, did not occur with any known frequency, and were perpetrated by others, as Mr. Smith was transferred to a different location sometime around June 2013. Thus, Plaintiff's hostile work environment claim, at least as it relates to the June 2012 incident with Mr. Smith, is time barred.

Considering Plaintiff's claims that occurred within the limitations period, the Court finds that they fail. In evaluating a hostile work environment claim, the Court considers the work atmosphere both objectively and subjectively[14] while keeping in mind that Title VII is not "a general civility code for the American workplace."[15] To that end, "run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim."[16] The United States Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of

---

[14] *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998).

[15] *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998).

[16] *Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012).

employment."[17]  These standards are "sufficiently demanding" to ensure that they "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing."[18]

"'Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview.'"[19]  The harassment's severity and pervasiveness are "evaluated according to the totality of the circumstances, considering such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[20]

The acts of which Plaintiff complains do not meet this standard.  As stated, the exact nature of Plaintiff's claim is unclear.  At most, Plaintiff has pointed to the sporadic use of abusive language, gender-related jokes, and occasional teasing.  Such acts are not sufficient to survive summary judgment.  As a result, the Court need not consider Defendants' arguments concerning the *Faragher/Ellerth* defense.

---

[17] *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

[18] *Id.* (internal quotation marks omitted).

[19] *Oncale*, 523 U.S. at 81 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

[20] *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) (citations and internal quotation marks omitted).

*2.    Discrimination*

Title VII prohibits an employer from discriminating against any individual because of "race, color, religion, sex, or national origin."[21] "To make out a prima facie case of discrimination, [Plaintiff] must demonstrate (1) membership in a protected class, (2) adverse employment action, and (3) disparate treatment among similarly situated employees."[22]

In her Complaint, Plaintiff alleged that she received more abrasive treatment and was belittled and singled out by Mr. Smith. Plaintiff also complains of being treated worse than other employees. For example, Plaintiff stated that she was sometimes given demonstration cars ("demo cars") that were worse than others received.

To the extent that these incidents occurred prior to February 2013, they are barred as set forth above. Even considering these claims, they fail because they do not rise to the level of an adverse employment action. "Adverse employment action includes 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"[23] The Tenth Circuit does not consider "a mere inconvenience or an alteration of job responsibilities to be an adverse employment action."[24]

None of the actions complained of by Plaintiff rise to this level. Plaintiff asserts that she was yelled at by her manager and was sometimes given less desirable demo cars to drive. Such

---

[21] 42 U.S.C. § 2000e-2(a)(1).

[22] *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005).

[23] *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007) (quoting *Hillig v. Rumsfeld*, 381 F.3d 1028, 1032–33 (10th Cir. 2004)).

[24] *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998) (internal quotation marks omitted).

actions did not result in a significant change in her employment status.  Further, Plaintiff cannot show that these actions were the result of her gender.  Plaintiff testified that Mr. Smith yelled at both male and female employees.  She also testified that at times she was given more desirable demo vehicles.  Therefore, this claim fails.

    *4.*    *Retaliation*

To establish a prima facie case of retaliation under Title VII, Plaintiff must show that "(1) she engaged in protected opposition to discrimination; (2) she suffered an adverse action that a reasonable employee would have found material; and (3) there is a causal nexus between her opposition and the employer's adverse action."[25]

Plaintiff's retaliation claim contains three parts.  First, she alleges that she was retaliated against when she was removed from the finance manager position.  Second, Plaintiff alleges the written warning she received on June 25, 2013, was in retaliation for a complaint filed by her husband.  Finally, Plaintiff complains that she did not receive a written job description and pay plan between June 2013 and August 2013.

The Court first examines Plaintiff's claim that her removal from the finance manager position was in retaliation for refusing Mr. Smith's sexual advances in June 2012.  Defendant argues that Plaintiff's removal from the finance manager position was not a materially adverse action and that she cannot show a causal connection between her protected activity and her removal from this position.  The Court agrees that Plaintiff cannot satisfy the third prong.

---

[25] *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1086 (10th Cir. 2007) (internal quotation marks omitted).

To prevail on a retaliation claim, a plaintiff must prove "that a causal connection existed between the protected activity and the materially adverse action."[26] "A causal connection is established where the plaintiff presents evidence of circumstances that justify an inference of retaliatory motive."[27] "'A retaliatory motive may be inferred when an adverse action closely follows protected activity. However, unless the termination is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation.'"[28]

The exact nature of Plaintiff's claimed protected opposition is unclear. To the extent that Plaintiff asserts that she was removed from the finance manager position because she refused Mr. Smith's advances in June 2012, that claim fails. As set forth above, Mr. Smith informed Plaintiff that she would be removed from the finance manager position in April 2013 and she was actually removed from that position in June 2013. Thus, the minimum amount of time between the protected activity and the adverse action was ten months. The Tenth Circuit has found that when the time between the protected activity and the adverse action was three months, the plaintiff could not establish causation without additional evidence.[29] Here, Plaintiff has failed to supply any additional evidence that would lead a reasonable jury to conclude that she

---

[26] *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008).

[27] *Garrett v. Hewlett–Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002) (internal quotation marks omitted).

[28] *Piercy*, 480 F.3d at 1198 (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)).

[29] *See id.* at 1198–99; *Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1183–84 (10th Cir. 2002); *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir.1997).

was removed from the finance manager position as a result of refusing Mr. Smith's advances in June 2012.

To the extent that Plaintiff is arguing that she was removed from the finance manager position as a result of her complaint against Mr. Smith, again the timing does not support her claim. Plaintiff did not report the June 2012 incident to Cutrubus until approximately June 26, 2013. As stated, Plaintiff was removed from the finance manager position before this date. Therefore, there can be no causal connection between her complaint and her removal from that position.

The Court next examines Plaintiff's allegation that she received a written warning on June 25, 2013, in retaliation for an EEOC complaint filed by her husband, also a Cutrubus employee.[30] "Disciplinary proceedings, such as warning letters and reprimands, can constitute an adverse employment action."[31] However, such proceedings are generally insufficient absent evidence that they had some impact on Plaintiff's employment status.[32] Here, there is no evidence that the written warning Plaintiff received had any effect on her employment status. Therefore, she has failed to make out a prima facie case.

Even if Plaintiff could make out a prima facie case, Plaintiff's claim would still fail. Plaintiff's retaliation claim is subject to the burden-shifting framework set forth in *McDonnel Douglas Corp. v. Green*.[33] Under that framework, once Plaintiff has established a prima facie

---

[30] The extent of Plaintiff's husband's complaint is unclear, but there is no evidence that it related to Plaintiff in any way. Rather, it was related to his own employment.

[31] *Medina v. Income Support Div.*, 413 F.3d 1131, 1137 (10th Cir. 205).

[32] *Id.*

[33] 411 U.S. 792 (1973); *see Jeffries v. State of Kan.*, 147 F.3d 1220, 1231 (10th Cir. 1998) (applying the *McDonnell Douglas* framework to a claim of retaliation).

11

case, "[t]he burden then shifts to the employer to articulate a legitimate non-retaliatory reason for taking the adverse employment action before ultimately shifting back to the plaintiff to establish that the employer's explanation is pretextual—i.e., unworthy of belief."[34]

Plaintiff testified that she was given the reprimand because she told another employee that Mr. Smith was upset with her and was going to fire her. Thus, there is evidence of a legitimate non-retaliatory reason for the reprimand. Plaintiff has provided no evidence that this reason was a pretext to retaliate her for her husband's complaint. Therefore, this claim fails.

Finally, the Court considers Plaintiff's complaint that she did not receive a written job description and pay plan. Plaintiff has failed to show that the failure to provide her with a written job description and pay plan constitutes an adverse employment action. "To be materially adverse, an action must be sufficient to 'dissuade [ ] a reasonable worker from making or supporting a charge of discrimination.'"[35] "Title VII protects individuals 'not from all retaliation' but only from retaliation 'that produces an injury or harm.'"[36] This requires injury rising to a requisite "level of seriousness."[37] Plaintiff's claim does not reach this level of seriousness.

Even if Plaintiff could demonstrate an adverse action, Plaintiff's claim fails on the third prong. Title VII retaliation claims require an employee to demonstrate that, but for her protected

---

[34] *Thomas v. Berry Plastics Corp.*, 803 F.3d 510, 514 (10th Cir. 2015).

[35] *Daniels v. United Parcel Service, Inc.*, 701 F.3d 620, 638 (10th Cir. 2012) (quoting *Burlington N. & Santa Fe Ry Co. v. White*, 548 U.S. 53, 68 (2006)).

[36] *Williams*, 497 F.3d at 1087 (quoting *White*, 548 U.S. at 67).

[37] *Id.* (quotation marks omitted).

activity, she would not have faced the alleged adverse employment action.[38] Plaintiff was working without a written job description and pay plan before she informed Cutrubus of her complaint against Mr. Smith. Therefore, there can be no but-for causation and this claim fails.

### 5. *Constructive Discharge*

Plaintiff next brings a claim for constructive discharge. "Title VII encompasses employer liability for a constructive discharge."[39] "The plaintiff's burden in establishing constructive discharge is substantial."[40] "A constructive discharge occurs when an employer, through unlawful acts, makes working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign."[41] "The conditions of employment must be objectively intolerable; the 'plaintiff's subjective views of the situation are irrelevant.'"[42]

Plaintiff has failed to meet her substantial burden. There is no evidence from which a reasonable jury could conclude that Cutrubus made working conditions so intolerable that a reasonable person in Plaintiff's position would feel forced to resign. While Plaintiff may have felt this way, her subjective views are irrelevant. There is no evidence that Plaintiff's employment was objectively intolerable.

### B. NEGLIGENT RETENTION AND SUPERVISION

Plaintiff also brings a state-law claim for negligent retention and supervision. Plaintiff's Complaint invoked federal question jurisdiction. Thus, her state-law claim is before the Court

---

[38] *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ---U.S.---, 133 S. Ct. 2517, 2534 (2013).

[39] *Penn. State Police v. Suders*, 542 U.S. 129, 143 (2004).

[40] *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 980 (10th Cir. 2008).

[41] *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004).

[42] *Sanchez*, 164 F.3d at 534 (quoting *Yearous v. Niobrara Cty. Mem'l Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997)).

under supplemental jurisdiction.[43] But, as here, "'[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.'"[44] Therefore, upon dismissing Plaintiff's Title VII claims, the Court declines to exercise supplemental jurisdiction over her negligent retention and supervision claim, and will dismiss it without prejudice.

C.    APPOINTMENT OF COUNSEL

Plaintiff has renewed her request for appointed counsel. As explained previously,[45] the decision as to whether to appoint counsel is within the discretion of the court.[46] For substantially the same reasons previously stated, the Court denies Plaintiff's Motion.

## IV.  CONCLUSION

It is therefore

ORDERED that Defendants' Motion for Summary Judgment (Docket No. 25) is GRANTED. Judgment is entered in favor of Defendants and against Plaintiff on her Title VII claims. Plaintiff's state-law claim for negligent retention and supervision is dismissed without prejudice. It is further

ORDERED that Plaintiff's Renewed Motion to Appoint Counsel (Docket No. 26) is DENIED.

The Clerk of the Court is directed to enter judgment as set forth above and close this case forthwith.

---

[43] 28 U.S.C. § 1367.

[44] *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quoting *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998)).

[45] Docket No. 17

[46] *McCarthy v. Weinberg*, 753 F.2d 836, 838 (10th Cir. 1985).

DATED this 21st day of June, 2016.

BY THE COURT:

_____
Ted Stewart
United States District Judge